Covenant Care at Home, Appley, by Peter Lorenz. Councilor Bavis, you may proceed. Good morning, Your Honors, Council. Before I begin, I have a question. Since I will be talking about me, the counsel for the appellant, do I refer to myself as petitioner's counsel? I simply don't know how to refer. I don't want to refer to myself in a third person. Well, you are the appellant, am I correct? Yes. Well, you're also the claimant. So you'll have to probably, you'll have to refer to yourself as either one or the other, I would suggest. You're arguing on behalf of yourself? Well, there's situations where it was just me that the appellant wasn't there. It was my actions. Oh, okay, fine. Well then, refer to yourself then, if you wish. Which are you most comfortable with? Petitioner's counsel. It's going to be in third person, though. Well, that's you, right? Yes, yes. I think we understand that. Okay. Okay. Okay. Thank you very much for the clarification. I appreciate it. So the petitioner is asking this Honorable Court to reverse and remand the decision of the Commission and would you deny the reinstatement of the case? The case was filed in July, on July 22nd, 2015. Upon completion of petitioner's treatment for her back, which was the injured body part, petitioner's attorney filed three motions for a hearing in July 2016, October and January 2017. In January 2017, there was a pretrial conference with both counsels in front of the arbitrator. And there was another hearing, and I believe that was in August 2017, with the petitioner present. The respondent accepted the recommendations of the arbitrator and issued settlement contracts. The petitioner reviewed the settlement contracts, which included unacceptable language. So the settlement amount was accepted, which was almost $50,000. However, there was a specific language that the petitioner did not accept. Basically, the language stated that she cannot apply for Medicare or Social Security benefits 30 months following the settlement contract approval. As she was born in 1956, she was entitled, she would be entitled to apply for those benefits in 10 months. The contract stated 30 months, so she did not agree to that. Respondent counsel, petitioner counsel were in constant communication regarding the disputed language. 16 days after the second pretrial with the injured worker, the respondent counsel filed a motion to dismiss. It was puzzling. It was unprecedented. I mean, we were in the middle of negotiations, and that was granted, and that motion was granted. On March 2nd, 2018, the respondent counsel emailed the petitioner counsel, there's a new adjuster on the file, we will be able to remove the language, there is no need to proceed to trial. As a matter of fact, he stated, there is really no need to proceed to trial as long as we can agree on appropriate contract terms. That's transcript, I'm sorry, record page 95. That was March 2nd. On April 9th, again, he filed a motion to dismiss. And that was on the day that he sent me email with condolences because my father passed. That was the same day. I apologize. That motion was denied as we were actively negotiating the terms. Then the case appeared in January 2019. And it is correct. I did not show up. I wasn't aware the case was on the docket. The case was dismissed. Then the case appeared, and the case was reinstated. The case appeared, the case was reinstated in March. Then appeared on arbitrator Carlson docket on May 3rd. At that time, it was set for a hearing for May 15th. As you owners, you know, I know the rules. The cases that are above red line, it's an unwritten rule, but followed by the commission. They continue to appear at three-month intervals. As a matter of fact, I have several cases that are over eight years old. They continue to appear at three-month intervals. After the, since nobody showed up, I mean, the petitioner, no petitioner's counsel show up for the hearing, which was set for May 15th, 2019. The case was dismissed. Petitioner's attorney timely filed motion to reinstate. On June 22nd, 2019, there was a hearing in front of the arbitrator. The respondent counsel objected to the motion to reinstate. During that hearing, basically, whatever the petitioner's counsel stated, the arbitrator stated it was a white noise. The procedural history, the negotiations, the conferences with him and the injured worker, his recommendations, it was all white noise. He stated basically the whole, the entire case is about you not showing up for May 15th hearing. And petitioner's counsel requested for the proofs to be open so she could provide an affidavit from her clerk that nobody from her office requested that hearing date. At that time, the petitioner attorney was a solo practitioner with one staff member. It was a clerk paralegal slash receptionist. All decisions were made by the counsel, nobody else. And the counsel did not request that date. And the counsel asked the arbitrator to leave the proofs open. Even the respondent requested that. He stated that if the arbitrator is inclined to give a continuance, he would request an affidavit from petitioner's counsel, whether or not somebody requested a hearing date of May 15th. The arbitrator did not leave the proofs open. The petitioner appealed. The commission issued a decision totally, absolutely ignoring, ignoring the fact that the unwritten scheduling of over redline cases appear at three-month intervals. The petitioner argued that in her brief there was no mentioning of that. Yes, the rules are clear. They say at monthly intervals. However, they're not specific at monthly status quo. However, they're not specific whether it's every month, every two months, every three months. Therefore, the internal procedure should be taken into consideration in this case. But can I ask you a question? Yes. Isn't there a reg that an administrative regulation that says that if it's older than three years, then that's what I understand to be above the redline. I mean, I may have that wrong, but that's what I understood it to be. Then you've got to be present at every status quo. Yes. Yes, absolutely, Your Honor. This is my argument. Is it the real issue here is that nobody was there? No, the issue is that nobody was there. But why nobody was there? Because the case jumped. In March, it was reinstated. It was not supposed to be on the docket until June. It appeared on May 3rd. Even the respondent's counsel, he stated- So they had a responsibility to give three months from the reinstatement. This is how it's done. This is how it's done, Your Honor, that they appear below redline, above redline every three months. I wasn't aware that it appeared in May because we were not checking the arbitrated persons' status until June because that's the standard procedure. It's not specific in any of the rules, but this is what they do, and every attorney can testify to that. Counsel, was any date given, placed on the docket, things of that nature, notice given at the reinstatement point as to when the case would next be up? No. No. So you had no affirmative notice of any particular date once it was reinstated? No. No. I went by the procedure of the commission, and it's like I said, it's every three months. And the arbitrator, he was adamant, adamant that somebody must have been present from my office. There was no one then- Nobody requested May 15th. And I believe the arbitrator was adamant about that because if no one was there, the case should have been dismissed at the status quo, not assigned a hearing date. And this is the problem. The petitioner was denied procedural due process, and why is that? Because she was not given a notice. She was not given a notice about the hearing date. Don't the administrative regulations suggest that she's not entitled to any notice other than the first appearance before the arbitrator? After that, it's the obligation of the attorneys to check the commission's records to determine what future dates are. Yes. Yes, Your Honor. Absolutely. She didn't have to get notice. However, the hearing was assigned randomly in May. It shouldn't be on the docket in May. Well, that's different. That's different than procedural due process. You're arguing procedural due process because she didn't get notice of the May meeting, and the commission's regulations say she doesn't have to get notice. Well, Your Honor, in Southern Illinois Asphalt v. Pollution Control Board, when the administrative order is against the manifest weight of the evidence or where the agency has acted arbitrarily or capriciously, as thereby abused the discretion vested in it, the court should not intervene, not hesitate to intervene. And this is what I am asking for. In Morrissey and Carey v. Pifus, the procedural rules are meant to protect person from, not from deprivation, but from mistaken or unjustified deprivation of life, liberty, or property. The petitioner was deprived of the property. She was placed in an impossible position. It was, here's the $50,000. We're going to give it to you. But you cannot apply for Medicare or Social Security for the next 30 months, although she was entitled to by law. The Respondent's Council stated, and just give me a second, and that's record page 150. He wrote, for reasons unknown to ASHA, meaning the Respondent's Council, the matter was reset to arbitrator's currents on May 3rd, 2019. Even he didn't know why it was reset to that date, because we were anticipating June. Well, Counsel, how did he know to be present on May 13th? I don't know. I don't know, Your Honor. Could it be that he checked the Commission's records? I can't answer that. I can't answer that. The question is, he knew to be there, but nobody from your office, according to you, was present there because you didn't know that you should be there. Now, if he could know, my question is, how is it that you didn't know? I can only stipulate that he checked that month. He had other cases in front of arbitrator Carlson, and he checked and he saw this particular case, Bala case, that it appeared. But that's just my stipulation. I really don't know. We were checking the cases, and I'm still checking the cases every three months, because that's how they appear. That's how they appear. In Holland, that decision in Bala is so unjust. It is so unjust. In Holland, it was a case where the reinstatement was given five times. The arbitrators say that no more reinstatements. It was appealed to the circuit court. The circuit court judge stated it was an abuse of discretion on part of the Commission, and it was remanded, and it was reinstated five times. This one, like I said, the January, the January, yes, yes, I did not appear. We missed it. I missed it. However, the previous one when we were negotiating and the March and the May one, it shouldn't appear. It should not have appeared. The circuit court used Dyson case. The red light is on, so you will have time and apply, counsel. Unless there are questions from the court. No. Okay, very good. Thank you, Your Honor. Counselor, and you may respond. Thank you, Justice. Thank you, counsel. This case is about the Commission's rules. The Commission's rules, which are presumed to be prima facie reasonable, and whether or not those rules were arbitrarily applied in the circumstances of this particular claim. I think one of the questions by one of the justices sheds light on a challenge actually to the reasonableness of the rules themselves. Specifically, that's Rule 9020.60. It's the first paragraph of the rules that the Commission publishes about how they run calls. The first sentence, I'll just read it quickly. Written notices will be sent to the parties for the initial status call setting on arbitration only. In other words, just the first time. Thereafter, cases will be continued for three-month intervals or at intervals upon notice by the Commission until the case has been on file at the Commission for more than three years. Now, jumping to the portion of that same rule, which is fairly long, fairly comprehensive, quite detailed, the specific portion, namely cases on file for three years or more, a fair reading of it is quite simply that the parties that appear before the Commission have a heightened obligation to follow their cases after they've been on file for three years or more. Mr. Lorenz, could you speak into your mic a little? You were very clear, and then you faded a little bit here. I apologize. Oh, there you are. Okay. So the presumption is, and I argue that it's a reasonable presumption, that cases on file for more than three years have a heightened obligation imposed on the parties, both parties, both parties. This gets to some of the questions on the argument by the appellant. To follow those cases, to follow those cases, the case has to be set for trial or dismissed unless a written request is made for a continuance for good cause shown. In the almost 400 pages in this record, there is no such written request from the appellant. Additionally, the rule imposes the obligation on the parties to physically appear at the calls. Fairly stated, these rules, which are prima facie presumed reasonable, I gather the appellant's argument is that really they're not. But anyway, prima facie reasonable. One of the questions asked of the appellant related to, although you didn't know that after the third reinstatement, the matter had been set back on the status call, how did the opponent, and of course, the appellant answered honestly, well, I don't know. The obligation is for the parties, both parties, to follow and check, follow and check in a heightened way after three years. And there's nothing unreasonable about that. They're prima facie valid and reasonable. Now, focusing on the hearing that was held, a record for which was, of course, kept, which the rules also require, on reinstatement, it's about 30 pages in 400. It's between 31 and 61 of the record. This is the hearing on the third reinstatement. Remarkably, what's revealed in that procedure and in the transcript is that one of the parties was not, in fact, there to formally proceed with the reinstatement, but rather to request a continuance, a continuance of, presumably, the petition to reinstate. This is after, as the commission, I think, fairly described the procedural history of the claim, after a protracted and long, years long, attempt for the case to settle. Now, the parties in this court, of course, recognize some cases just do not settle. Some cases do not settle because one party or the other may or may not be reasonable. But nonetheless, the rules, prima facie valid and reasonable, and as applied, so long as they're not arbitrarily or unfairly applied, help to deal with those situations. The appellee here urges that a fair reading of the record overall, 400 pages, 396, or even just the 30 pages at the reinstatement, is that this case was not going to settle. That there was a dispute on certain settlement language, and when that becomes so, with the rules still governing the conduct of the calls that the commission has to run, much like this court has to run its call in a way, require certain things. And after a case gets to a certain age, they require a heightened observation and following of those cases. And there's nothing unreasonable about that. And the appellee argues that the hearing on the reinstatement took those into consideration, also revealed in that approximately 30 pages of the transcript, is that this particular arbitrator did, in fact, have a conference, a pretrial, a settlement pretrial of 45 minutes to an hour. 45 minutes to an hour prior to one of the, excuse me, one of the dismissals. This reveals, the appellee argues, a fair and equitable consideration and application of rules that are reasonable, valid, and properly applied. Counsel, what do you fix is the standard of review on an order dealing with the granting or denial of a motion to reinstate? Standard justice is clearly abuse of discretion. That standard, the commission properly cited, most importantly, to Bromberg, a Supreme Court case, Illinois Supreme Court case, obviously, on that standard and to several others. It's abuse of discretion. And specifically in Bromberg, if I remember correctly, there was a petition for review that had been filed but was not going forward. They made the comment that, excuse me, that the obligation was clearly on the movement, the movement for reinstatement, in that case, there had been a dismissal, not to appear on the date for the reinstatement requesting a continuance. And I'd argue in this particular circumstance, that's really what happened on July 16th of 2019. July 16th, 2019, of course, being the date that there was a transcription taken of a hearing on the third petition to reinstate. There's other cases that the commission cites, too, that I think are very instructive on this. But they do a fair, detailed, and exhaustive review of the procedural history of the case, the existence of the rules, and they apply them reasonably, judging fairness and equity in their application by the arbitrator at the time of the July 16th, 2019 hearing. Just quickly on the due process argument, and then I'll yield the balance of my time for any questions. So the due process issue, procedural due processes, the justices have pointed out, apply to both parties. I said this at the beginning of the argument. Of course, the appellant has to follow their cases. In this case, the appellant here, of course, is a petitioner. They have to do a little more work to follow the cases to make sure that they don't trail off. But it's not just the petitioner that has to follow cases. Respondents have to. The appellee in this case had to follow this case. Following this case became difficult after its third dismissal in January, excuse me, second dismissal in January of 2019. It then becomes trickier because re-noticing after re-entry on the docket, which the rule setting up the docketing system references, namely that we run a docket and we re-enter if a case is reinstated, makes mention of. So that three-month cycle that the commission runs on becomes a little jiggered, a little off. So there's a heightened obligation to find out where your case is, whether you're a petitioner or a respondent. So that due process applies to both. And I'd yield the balance of the time unless there's questions. Any questions from the court? Further questions? No. Thank you, counsel. Counsel, you may reply. Thank you very much. So based on the respondents' counsel assertions, he indicated it was obvious the case would not be settled. Why wouldn't the petitioner file a motion for a hearing when she filed three times, 2016 twice and 2017? She didn't because the respondent continuously reassured her, we will get this done. We will get this done. But in fact... Please strike that. The meeting with the injured worker for 45 minutes with the arbitrator, the counsel mentioned that, yes. And the respondent agreed to the terms recommended by the arbitrator. He recommended to the... He agreed to the settlement amount. The only issue was the language. But he emails the petitioner, yes, I will get this done. There's a new adjuster on the file. I will get this done. That's the reason the petitioner did not file a motion for a hearing. Because of his reassurances. The counsel mentions Broomberg. Broomberg is a case with totally different set of facts. It is about the counsel, I believe, not obtaining the authentication of the transcript for a very long period of time. It is not the facts are quite different. The similar case is the case I mentioned is Holmes versus IWCC. Therefore, once again, the petitioner asked this. You, Honorable Justices, you are here to make the wrong right. To make the injured lady whole. And she was promised. And she's entitled to. If it wasn't for the reassurances of the respondent, the case would proceed to a hearing. It can proceed to a hearing now. There's no dispute regarding medical. There's no dispute regarding anything except that piece of language which is no longer valid as she is. She is receiving Medicare and Social Security benefits. And she's. She was born in 1956. Therefore, the petitioner asked you, Honorable Justices, to. We've remanded reverse and remand the case back to the commission with instructions to reinstate the case based on all of the facts given. Thank you. Questions from the court or counsel. No, okay. Thank you counsel both for your arguments in this matter this morning that will be taken under advisement written disposition shall issue. This time the clerk of our court will escort you out of our remote courtroom, and we'll proceed to the next case. Thank you. Thank you very much. Justices. Thank you. Thank you.